IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIMMY L. ROBERTS,

    Plaintiff,

vs.

KENNETH S. APFEL, Commissioner
Social Security Administration,

    Defendant.

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 23 2000

CLERK

Civ. No. 99-596 JC/RLP

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     This is an action to review the final decision by the Commissioner of Social Security regarding Plaintiff's entitlement to benefits under Title XVI of the Social Security Act. The matter presently before the Court is Plaintiff's Motion to Reverse and Remand for a Rehearing. (Docket No. 11).

### Administrative History

2.     Plaintiff, Jimmy L. Roberts (Plaintiff herein), filed an application for supplemental security income benefits on February 8, 1997. His application was denied initially and on reconsideration. A hearing was conducted by an administrative law judge (ALJ herein) on December 16, 1997. The ALJ denied Plaintiff's application in a decision dated March 27, 1998. Plaintiff appealed this decision to the Appeals Council. The Appeals Council declined to review the Commissioner's decision on April 26, 1999. Plaintiff filed the present action on May 26, 1999, seeking to overturn

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



the Commissioner's final decision, and requesting a remand for further proceedings.

## Standard of Review

3.      The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed,[2] and (2) if the decision is supported by substantial evidence.[3] See 42 U.S.C. § 405(b); Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). The court must "meticulously examine the record and review it in its entirety," Id., but may not substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

## Factual Background

### Vocational History

4.      Plaintiff was born on September 12, 1944. (Tr. 101). He is a high school graduate, and had completed two years of college course work as of 1972. (Tr. 29-30, 123). Plaintiff was employed as a mechanical designer/design draftsman from 1975 until either 1985 or 1989. (Compare Tr. 133 with Tr. 32). This work did not involve the use of computers. (Tr. 66). From that point until 1995 Plaintiff worked as a handyman. (Tr. 32, 194).

---

[2] The Commissioner's decision will be reversed when he uses the wrong legal standards or fails to clearly demonstrate reliance on the correct legal standards. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castellano v. Secretary of H.H.S., 26 F.3d 1027, 1028 (10th Cir. 1994). "The finding of the (Commissioner) as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Substantial evidence is more than a scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Evidence is not substantial if it is overwhelmed by other evidence of record. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

2

## Gout

5.     Plaintiff suffered his first attack of gout[4] in November 1995, at age 51. (Tr. 193). He received emergency room treatment for gout on May 5, 1996 (left elbow), August 7, 1996 (left foot and knee), August 24, 1996 (right foot, left elbow), and January 5, 1997 (right knee). During these visits, emergency personnel administered injections of *Toradol*[5] to alleviate Plaintiff's complaints of pain (Tr. 220, 222-224, 216, 207-211, 205-206), and prescribed oral medications for the treatment of gout.[6]

6.     Donald Draney, M.D., an internist, examined Plaintiff on January 24, 1997. (Tr. 189-190). Dr. Draney described Plaintiff as "large, generally well appearing" and "muscular." Dr. Draney did not record a physical examination addressing gout, but stated that the history provided by Plaintiff was consistent with gout. He further stated Plaintiff had been "placed on Colchicine, does receive rather prompt relief of his symptoms from Indocin." He advised Plaintiff to "restart" Cholchicine, "resume" Zyloprim[7], and provided a prescription for Indocin to be taken as needed.

---

[4]Gout is a "disturbance of uric-acid metabolism occurring predominantly in males, characterized by painful inflammation of the joints, especially of the feet and hands, and arthritic attacks resulting from elevated levels of uric acid in the blood and the deposition of urate crystals around the joints. The condition can become chronic and result in deformity." American Heritage Dictionary of the English Language, 3rd Ed. 1996.

[5]*Toradol* is "a nonsteroidal anti-inflammatory drug, indicated for short term (up to 5 days) management of moderately severe acute pain that requires analgesia at the opioid level." 1999 Physician's Desk Reference, p. 2716.

[6]*Allopurinol*, for reduction of uric acid levels, Id., p. 1282; *Colchicine*, for treatment of chronic gouty arthritis when complicated by frequent, recurrent acute attacks of gout, Id., p. 1749, and *Indocin*, for relief of pain, fever, swelling, redness and tenderness of acute gouty arthritis. Id., p. 1812.

[7]*Zyloprim* is a brand of *Allopurinol*. See footnote 6, above.

3

He also referred Plaintiff to Frank Bryant, M.D., for further evaluation.

7. Plaintiff was examined by Dr. Bryant, an orthopedic surgeon, on March 26, 1997, for evaluation of pain in his right knee, foot, and ankle. On physical examination, Dr. Bryant noted that Plaintiff's right knee was normal, and that his right foot was somewhat tender at the first MTP joint. He stated that Plaintiff's gouty arthritis was medically controlled, and recommended that Plaintiff continue with medical therapy. (Tr. 201-202).

8. Nicholas Nillo, M.D., performed a consultative evaluation of Plaintiff on April 23, 1997. Dr. Nillo's primary specialty is psychiatry. Dr. Nillo found no objective evidence of gouty arthritis on the day of his examination.[8]

### Degenerative Disc Disease

9. When seen by Dr. Draney on January 24, 1997, Plaintiff also complained of pain in his neck, shoulder and arm, and tingling in his left arm. Dr. Draney felt that Plaintiff's symptoms were suggestive of intervertebral disk disease in the neck, and advised him to return if symptoms in his upper extremities worsened. (Tr. 189-190). There is no record of further care by Dr.

---

[8]"The claimant enters the office with an apparently-normal gait and does not appear to be in any distress. He has a muscular body build. The claimant uses no assistive nor supportive devices." (Tr. 194-195).

"Examination of the lower extremities, revealed mild bilateral bunions, most prominent to the right great toe, which was reported to be tender, but was not inflamed. No tenderness was reported on palpation of the joint margins of the ankles, knees nor hips. There was no synovitis or deformity, restriction of nor discomfort with range of motion apparent, nor was there other objective evidence of intrinsic joint pathology.

"On examination of the right knee, varus and valgus stress did not elicit discomfort. There was no laxity. Patellar grinding and ballottement were negative and range of motion was full and asymptomatic. The drawer signs were negative. The musculature is well developed and symmetrical, with graded 5/5 motor power and no measurable inequality, except for and apparent "give" and not a true weakness on extension movement against resistance in the right knee. However, there was full range of motion against full resistance." (Tr. 196)

"There was no objective evidence of inflammation or synovitis in any of the joints . . . No objective evidence of organic pathology was detected in the right knee at this examination." (Tr. 197).

*Draney, but he did refer Plaintiff to Dr. Bryant for evaluation.*

10.     When Dr. Bryant examined Plaintiff on March 26, 1997, Plaintiff stated that his neck pain had been present for 1-2 years, and was helped by physical therapy and chiropractic manipulation. He described the pain as fairly constant, worsened by certain activity or position, radiating from his neck to his arms, forearms and hand, and occasionally causing trouble holding objects. (Tr. 201). On physical examination, Dr. Bryant noted painful limited range of motion on the neck, especially with side bending or with extension, no change with axial load or axial traction. Examination of the shoulder was normal. Neurologic exam indicated light weakness of the wrist extensors on the left as compared to the right. Dr. Bryant diagnosed cervical disc disease with radicular symptoms suggestive of C-6 distribution. He ordered an MRI with revealed degenerative changes which he felt explained Plaintiff's neck and left upper extremity discomfort. (Tr. 147, 192, 203-204).     He prescribed *Daypro*[9], and indicated that Plaintiff "may" be a surgical candidate. (Tr. 203). Plaintiff was not taking *Daypro* at the time of his hearing before the ALJ. (Tr. 150, 55).

11.     When evaluated by Dr. Nillo one month later, Plaintiff stated that he was able to dress himself, do yard and housework, and that he was unable to drive a pick up when he had gouty flare-ups due to discomfort when applying brakes. No other limitations were expressed. (Tr. 194). There is no indication that Dr. Nillo reviewed Plaintiff's cervical MRI. He did, however, perform a detailed physical examination (Tr. 195-196) which demonstrated the following:

Neck:          Minimal tenderness of the left lateral neck, with full and asymptomatic

---

[9]*Daypro* isa nonsteroidal anti-inflammatory analgesic indicated for acute and long term use in the management of signs and symptoms of osteoarthritis. 1999 Physicians' Desk Reference, at 2953.

5

*range of motion.*

Upper Ext.: Tenderness to palpation over the bicipital groove of the left shoulder and over the extensor musculature of the left forearm, reported tenderness over the left paracervical musculature; ability to extend both hands fully, 5/5 motor power throughout the upper extremities, no objective evidence of unilateral weakness or atrophy.

Back: Negative straight leg raising test.

Lower Ext: Ability to stand on either leg without instability or apparent discomfort.

Dr. Nillo expressed no opinion about what Plaintiff was able to do despite his impairments.

12. A non-examining physician, Clint Morgan, M.D., a neurosurgeon (Tr. 78-79), reviewed Plaintiff's medical records, including Dr. Nillo's report, and prepared a functional capacities assessment. Dr. Morgan indicated that Plaintiff could perform at the light exertional level (occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight- hour day, sit about six hours in an eight- hour day), had unlimited ability to push/pull within the weight limitations set out above, and that his ability to reach overhead was limited. (Tr. 225-232). The stated facts on which he based these limitations were:

> 52 y.o. male with DDD (degenerative disk disease) (C5-C6) and arthritic gout in multiple joints. 5'11" 232 # (Listing 328#).
> MRI 4/14/97 DDD C5-C6 - explains neck and LUE discomfort.
> 3/26/97 - Dr. Bryant exam. Cervical disk disease gouty arthritis. Knee & joint no mechanical symptoms, no history of injury.
> 4/23/97 CE Dr. (consultative exam) Nillo - nl gait, no distress. Blood pressure 160/100 repeated 150/100.
> 5/13/97 Gout flare up - R foot.
> May need back surgery Dr. Bryant 4/23/97.

(Tr. 226-227, 231).

6

### Abscess and Hypertension

13. Plaintiff required surgery to repair a perirectal abscess with perianal fistulas in January 1997. (Tr. 56, 158-185). He had recovered within a month, and has had no further treatment. (Tr. 187). He also has uncontrolled hypertension, for which he takes no medication. (Tr. 37, 150, 195, 197). Plaintiff does not challenge the ALJ's determination that these conditions did not contribute to disability.

### Plaintiff's Testimony

14. Plaintiff testified that he was unable to work because of pain in his neck, shoulders, arms, legs, and in most of his joints (Tr. 33), for which he took no prescription or over the counter pain medication. (Tr. 55). He complained of headaches, and an inability to sleep due to neck and shoulder pain. (Tr. 34, 42, 47, 57). He saw a chiropractor, Dr. Calkins, three times a week for pain control, but no other doctors. (Tr. 36, 60). In describing his physical abilities, he stated that he was unable to sit for more than 5-20 minutes without getting up, could not be on his feet for more than 5-10 minutes, that he needed help shopping because bending over to pick things up caused pain, he could not kneel but could squat, he did not do house work, could bathe and dress alone, but that his hygiene was deteriorating, that he could eat alone, that he sometimes could not use his left hand, that he prepared only microwavable food, and that he could pick up a gallon of milk. (Tr. 39, 41-48).

15. Plaintiff also testified that he was currently having his fourth attack of gout that calendar year[10], that his last attack had been in April, seven months earlier, and that attacks lasted about

---

[10] The ALJ requested that Plaintiff submit additional medical records. No medical records indicating care for an attack of gout suffered at the time of the administrative hearing were submitted to the ALJ or to the Appeals Council.(Tr. 69, 153-154, 7, 238-241).

7

a week. (Tr. 53-54).

## Vocational Testimony

16. A vocational expert (VE herein) testified without objection at the Administrative hearing. (Tr. 62). Based on hypothetical questions posed by the ALJ, the VE stated that Plaintiff could not return to his past relevant work (draftman; light; skilled), but would be able to perform the jobs of hotel/motel clerk(DOT 238.367-038) and auto rental clerk (DOT 295.467-026).[11] (Tr. 66-67).

## The ALJ's Decision

17. The ALJ concluded that Plaintiff had severe impairments of gout, degenerative disk disease of the C-spine and hypertension. Relying on the evaluation of the non-examining physician, Dr. Morgan, he found that the limitations resulting from these impairments reduced his residual functional capacity to the light exertional level. The ALJ found Plaintiff's testimony concerning his functional limitation and pain to lack credibility. Finally, the ALJ determined that although Plaintiff could not return to his past relevant work, he could perform the jobs of hotel/motel desk clerk and auto rental clerk, which existed in significant numbers on the regional and national economies. (Tr. 13-18).

## Analysis

18. Plaintiff contends that the ALJ's questioning of him was inadequate, and suggests specific questions that should have been asked in order to afford him a full hearing. The ALJ's duty is to ensure that an adequate record is developed, consistent with the issues raised. Henrie v. U.S. Dept. of Health and Human Services, 13 F.3d 359, 360-361 (10th Cir. 1993). The record, either

---

[11] The VE identified other jobs, however, the ALJ cited only to these two in his decision. (Compare Tr. 62-67 with Tr. 18).

8

through the ALJ's questioning, questioning by Plaintiff's representative, or through statements made by Plaintiff to medical personnel, adequately developed evidence addressing the nature of Plaintiff's alleged impairment, the ongoing treatment and medication received by Plaintiff, and the impact of the impairments on Plaintiff's daily activities. See Musgrave v. Sullivan, 966 F.2d 1371, 1375 (10th Cir. 1992). Greater detail is not required.

19. Plaintiff also argues that the ALJ erred by failing to obtain records from his treating chiropractor, Dr. Calkins. Plaintiff did not identify Dr. Calkins as a treating medical care provider in documentation submitted prior to the administrative hearing. (Tr. 105-131, 144, 148-151). The ALJ stated that he would consider the records of Dr. Calkins as an alternative source, and gave Plaintiff's representative additional time within which to submit the chiropractor's record. (Tr. 34-36, 69). The representative subsequently wrote the ALJ stating that she had been unable to obtain the records, but felt that the record was adequate without them. (Tr. 153-154). Plaintiff's representative, though not an attorney, was the senior advocate at the Disability Advocacy Clinic, a fee based service provider. (Tr. 21, 153-154).

20. I find that the record was adequately developed, notwithstanding the absence of Dr. Calkin's records. The ALJ gave Plaintiff's representative the opportunity to supplement the record. The representative elected to close the evidence without seeking a subpoena for those records, advising the ALJ that the records were not necessary. The ALJ was entitled to rely on this representation. Cf. Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) (when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.) ; Cf. Brumfield v. Shalala, 1 F.3d 1249, 1993 WL

288344, *2 (10th Cir. 1993) (unpublished opinion) (copy attached). (ALJ has no greater responsibility to develop the records when a clamant is represented by a paralegal than when represented by an attorney.).

21. Plaintiff also argues that the ALJ failed to support his findings as to his residual functional capacity with positive evidence, relying instead on the absence of evidence. The ALJ based his assessment of Plaintiff's residual functional capacity on the report of the non-examining State agency physician, Dr. Morgan.

22. Pursuant to 20 C.F.R. § 416.946 (1999), the responsibility for assessing residual functional capacity rests with the "State agency staff medical or psychological consultants or other medical or psychological consultants designated by the Commissioner." Determinations made by State agency medical consultants are based on the evidence of record, including the reports of "consultative physicians, or any other medical or psychological consultant designated by the Commissioner." Id. The findings of non-examining State agency consultants are to be considered by the ALJ, consistent with the provisions of 20 C.F.R. §404.1527(f) and 20 C.F.R. §927(f) (1999). See S.S.R. 96-6p, West's Social Security Reporting Service, (Jan. 1992-Feb. 1999 pocket part) at 131-134. The ALJ explained in detail his reasoning for giving controlling weight to the residual functional capacity assessment of Dr. Morgan. (Tr. 14-17). I find that he applied the correct legal principle in so doing, and that his finding regarding Plaintiff's residual functional capacity is supported by substantial evidence.

23. In formulating hypothetical questions for the vocational expert (VE), the ALJ asked the VE to assume an individual of Plaintiff's age, educational background and experience, who had

transferrable computer skills, was limited to light work with a sit/stand option[12], and who could not perform overhead work. (Tr. 63). The VE testified that such an individual would be capable of performing the jobs of hotel/motel desk clerk and auto rental clerk, identifying those jobs by Dictionary of Occupational Titles definition (DOT herein). (Tr. 63-64).

23. The VE recognized that her opinion as to the requirements of these jobs differed from those set out in the DOT in two respects. First, the DOT does not provide a sit/stand opinion for the jobs of hotel/motel clerk and auto rental clerk (Tr. 65). Second, when advised that the Plaintiff did not have transferable computer skills, the VE stated that the skills required of these jobs could be acquired during a 30 day adjustment period. The DOT provides that the specific vocational preparation time for these jobs is over three months up to and including six months. Dictionary of Occupational Titles, 4th Ed., pp. 209, 235, 1009 (1991).

24. The ALJ has a duty to fully develop the record at Step Five of the sequential evaluation process. See Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993). In order to fulfill his obligation to fully develop the record, an ALJ may not simply accept the testimony of a vocational expert where that testimony conflicts with the DOT. Rather, the ALJ must question the VE about the source of his or her opinion and any deviations from a publication recognized as authoritative by the Social Security Administration's regulations.[13] Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999). When the VE's testimony conflicts with such authority, the ALJ

---

[12] It is not altogether clear why the ALJ included a sit/stand opinion in the hypothetical. The RFC evaluation he relied upon does not specifically contain such a limitation, although it does refer to Plaintiff's gouty episodes. (Tr. 225-232). Regardless, no alternative hypothetical question was posed to the VE.

[13] The Social Security Administration recognizes the Dictionary of Occupational Titles, published by the Department of Labor, as an authoritative publication. 20 C.F.R. §416.966(e).

11

must elicit a reasonable explanation for that conflict. Id.

25.  Examples of reasonable explanations are set out in Haddock v. Apfel, supra, and include an element of specificity not found in this case.[14] The VE failed to provide a reasonable explanation for the conflict between her testimony and the provisions of the DOT, and therefore her testimony was not substantial evidence upon which the ALJ could base a determination of nondisability.

## Recommended Disposition

26.  For these reasons, I recommend that Plaintiff's Motion to Reverse and Remand be granted in part, and that this case be remanded to the Commissioner with instructions to conduct additional proceedings at Step Five of the sequential evaluation process. The Commissioner and Plaintiff shall be permitted to pose additional questions to the vocational expert, and the vocational expert shall address specifically any conflict between the DOT and his or her testimony.

RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE

---

[14] Examples of reasonable explanations include the identification of another acceptable source which validates the VE's opinion or the identification of a specific number or percentage of a particular job which is performed at a lower RFC than that shown in the DOT. Haddock v. Apfel, 196 F.3d at 1091-1092.

NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

**Robert BRUMFIELD, Plaintiff-Appellant,**
v.
**Donna E. SHALALA, Secretary of Health and Human Services, Defendant-Appellee.**

No. 92-7137.

United States Court of Appeals, Tenth Circuit.

July 29, 1993.

E.D.Okl., No. CV-91-686-S.

E.D.Okl.

AFFIRMED.

Before LOGAN and BRORBY, Circuit Judges, and BRIMMER, [FN*] District Judge.

ORDER AND JUDGMENT [FN**]

LOGAN, Circuit Judge.

**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Appellant Robert Brumfield (claimant) appeals from an order of the district court affirming the Secretary of Health and Human Services' decision that claimant is not entitled to disability benefits under Title II of the Social Security Act. Claimant alleges disability since February 1, 1988, due to degenerative joint disease and resulting pain in his back and legs. Claimant last met the eligibility requirements for disability insurance benefits on March 31, 1988.

To prove disability under the Social Security Act, a claimant must establish a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Agency regulations establish a five-step sequential analysis to evaluate disability claims. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (describing five steps in detail). Here, claimant's request for benefits was denied both initially and upon reconsideration at the administrative level. Following a de novo hearing, the administrative law judge (ALJ) concluded at step four that claimant was not disabled because, as of March 31, 1988, he retained the capacity to perform his past relevant work in used appliance sales. "The claimant bears the burden of proof through step four of the analysis." Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.1993). The Appeals Council denied review, making the ALJ's decision the final agency decision for appellate purposes. 20 C.F.R. § 404.981; see Williams, 844 F.2d at 749.

Our review of the Secretary's decision is limited to whether the agency's findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir.1991). Evidence is not substantial if it is merely conclusory or overwhelmed by other evidence. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir.1990). The failure to apply the correct legal standards is grounds for reversal. Frey v. Bowen, 816 F.2d 508, 512 (10th Cir.1987).

Claimant contends that the Secretary's decision lacks substantial evidence in the record. We disagree. The record amply supports the ALJ's findings that claimant's allegations of disabling pain are inconsistent with the medical testimony and not wholly credible. Claimant asks us to reweigh the evidence in his favor, which we cannot do. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir.1992).

Claimant argues that his past relevant work was as a carpenter/contractor, not as a used appliance salesman, and that the ALJ failed to develop the record concerning how long he had worked in used appliance

sales and how much he had earned. Nonetheless, our review indicates that the record is full and fair, and contains uncontroverted evidence in support of the Secretary's conclusion that, under the applicable legal standards, claimant's past relevant work was in used appliance sales.

**2 We also conclude that there is substantial evidence supporting the Secretary's finding that, during the pertinent time period, claimant could have returned to his past relevant work. The ALJ was entitled to rely on (1) medical reports relating to the period before claimant's benefit eligibility expired, (2) an opinion by claimant's treating physician that as late as September of 1990, claimant had only slight functional limitations, and (3) claimant's continued work in used appliance sales after the alleged onset date of disability and after claimant's benefit eligibility expired.

Additionally, claimant argues that, because he was represented by a paralegal, the ALJ failed in his special duty to develop the record. Contrary to claimant's assertions, however, the ALJ has no greater responsibility to develop the record when a claimant is represented by a paralegal than when represented by an attorney. See Baker v. Bowen, 886 F.2d 289, 292 n. 1 (10th Cir.1989); cf. Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.1992) ("The ALJ's duty to develop the record is heightened when a claimant is unrepresented."). Our review of the record indicates that the ALJ did ask claimant about his work experience, his impairments and medical treatment, his functional limitations, and his daily activities. The ALJ did not fail to develop the record.

Claimant's last argument is that the ALJ asked "narrow and misleading" hypothetical questions of the vocational expert, thereby rendering the expert's conclusion that claimant could perform other jobs unreliable. Because the Secretary's decision that claimant was not disabled as of March 31, 1988, was based on the ALJ's step four determination that claimant could return to his past relevant work, and because substantial evidence supports that determination, we need not address this issue. If, at any step in the applicable analysis, it is determined that a claimant is or is not disabled, the process stops. See Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991). Vocational expert testimony was not necessary at step four because claimant did not prove his disability. See Musgrave, 966 F.2d at 1376. Here, although the ALJ asked the vocational expert to categorize claimant's past jobs and used that information to conclude that claimant could return to his past relevant work, the ALJ did not rely on any testimony elicited by the hypothetical questions of which claimant complains.

AFFIRMED.

> FN* Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation
>
> FN** This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3

END OF DOCUMENT